89 So.2d 294

STATE of Louisiana

v.

Alvin BUTLER.

No. 42705.

June 11, 1956.

Rehearing Denied June 29, 1956.

Eugene Stanley, New Orleans, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Phil Trice, Asst. Dist. Atty., New Orleans, for appellee.

VIOSCA, Justice ad hoc.

The defendant, Alvin Butler, was found guilty of the crime of manslaughter (denounced by LSA–R.S. 14:31) and sentenced to serve four years at hard labor in the state penitentiary. On appeal to this Court a new trial was granted, 227 La. 937,

81 So.2d 1. He was again tried, found guilty as charged, and given the same sentence. We are now considering this second trial on appeal.

Eleven Bills of Exceptions were reserved during the trial. Bills Nos. 1, 2, 4, 5 and 6 were abandoned on this appeal.[1]

Bills of Exceptions Nos. 3 and 7 are related and will be discussed jointly.

In support of defendant's plea of self-defense, his counsel endeavored to prove the details of an altercation between defendant's wife, Bertha Butler, and the deceased, Clarence Hampton, whom defendant stabbed to death. This altercation took place some two hours before the stabbing and out of the presence of the defendant. The details of this incident were related to the defendant by his wife.

The trial judge permitted defendant's wife to testify to the incident between herself and Clarence Hampton, and, likewise, permitted defendant, as a witness, to testify to what his wife had told him concerning this altercation.

The defendant offered to produce two additional witnesses, who were not present at the homicide, to prove the details of the prior altercation between the deceased and defendant's wife. The State's objection to this testimony was maintained and defendant reserved Bill of Exceptions No. 7.

1. Bill of Exceptions No. 2 was abandoned in oral argument.

On objection by the State, defendant's counsel was not permitted in his opening statement to tell the jury what he proposed to prove by the testimony of these two witnesses to the altercation between the deceased and defendant's wife, and defendant reserved Bill of Exceptions No. 3.

In holding that the testimony of these two witnesses to the altercation between the deceased and defendant's wife was immaterial and irrelevant, the trial judge stated:

"Both defendant as witness, and his wife Bertha Butler, each testified before the Jury, that defendant was acquainted with what had transpired in the saloon between Bertha Butler and the deceased Clarence Hampton sometime before the killing. In addition thereto, Bertha Butler was permitted to relate in the presence of the Jury, what she told her husband as to the incident between herself and Clarence Hampton. In this way the trial jury heard in detail Bertha Butler's account of her dispute with Clarence Hampton in the saloon preceding the killing."

Defendant's counsel contends that in excluding this evidence the trial court prevented defendant from placing legal and properly admissible evidence before the jury in support of his plea of self-defense. He relies upon LSA–R.S. 15:441, which reads:

"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."

We agree with the trial judge that the testimony of these two witnesses was irrelevant and immaterial, since they did not hear Bertha Butler relate the saloon incident to the defendant, did not know what information was communicated to him, and were not present at the homicide. Defendant was not present at the altercation between his wife and the deceased and was not a party thereto. His knowledge of what transpired was limited to the information communicated to him. What he was not told concerning this altercation could not affect his intent and was, accordingly, not relevant to establish the reasonableness of the defendant's fear of an impending attack or of suffering great bodily harm at the time of the homicide.

Since the defendant took the stand and testified as to what his wife told him, and his wife testified as to what took place at the saloon, as to her conversation with her husband, and as to the events connected with the homicide, defendant was in no way prejudiced by the trial judge's ruling.

The record shows that the jury had for its consideration, all of the relevant evidence relating to intent and to the plea of self-defense.

In the case of State v. Holbrook, 153 La. 1025, 97 So. 27, 30, the defendant pleaded self-defense to a murder charge. The deceased was alleged to have poisoned the defendant's dog, and the trial court would not permit testimony to be heard as to the details of the poisoning. We believe that the reasoning of this Court in sustaining the trial court in that case is applicable to the present case.[2]

The case of State v. McMillian, 223 La. 96, 64 So.2d 856, relied upon by defendant, is not applicable. There the defendant sought to elicit evidence of previous difficulties or altercations between the defendant and the deceased or between the deceased and others in the presence of the defendant.

Bills of Exceptions Nos. 3 and 7 are without merit.

Bill of Exceptions No. 8 was reserved to the action of the trial court in refusing to grant Special Charge No. 1, which reads:

"It is the duty of a man to protect the life and person of his wife.

"If a man's wife is assaulted, but not in such a way as to endanger her life or threaten her with great bodily harm, he may oppose force by force and use such force as is necessary to repel the assault, but no more; and if in the conflict which ensues, his adversary threatens to kill his wife or to inflict great bodily harm upon her, the husband may kill such person attacking her life in defense of her person.

"In other words, gentlemen, I ask that you consider the law of self defense previously charged you in reference to the defendant himself in connection with any assault, if any existed, made by the deceased on the person of defendant's wife.

2. We stated:
"The theory of the state was that the defendant had hunted up the deceased and killed him for having poisoned his (defendant's) hunting dog. The defense was that defendant had sought the deceased to obtain an explanation about the killing of the dog, and during the discussion had shot the deceased in self-defense, when the latter made a hostile demonstration.

"The complaint in this bill is substantially that the defendant was not allowed to go into the details of the poisoning of the dog. But he was allowed to testify fully as to the fact of such poisoning, his purpose in seeking the deceased, and all the circumstances of the meeting and killing. Only the above details were excluded, and they were properly excluded, being wholly irrelevant to the question whether or not defendant had sought the deceased for the purpose of killing, or merely to discuss the matter with him, as he claimed."

"A defendant may use the same defense to protect his wife as he would use in protecting himself, and may even kill the person who assaults his wife if he believes his wife in danger of such assault and attack, but the facts and circumstances must have been such that the jury can say that the defendant had reasonable ground for such a belief."

Counsel for the defendant argues that the above charge was proper under LSA-R.S. 14:22, which reads:

"It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person."

The evidence attached to the Bill of Exceptions reflects that the alleged insult to defendant's wife took place some two hours before the stabbing and out of the presence of the defendant. Therefore, the above quoted statute was not applicable and the evidence did not warrant the charge.

"* * * A trial judge is never authorized to make a charge based on a special defense not supported by the evidence, and it is his duty to give a requested charge only when it is 'wholly correct and wholly pertinent'. LSA-R.S. 15:390. See State v. Reed, 206 La. 143, 19 So.2d 28, and cases cited therein; State v. Natalle, 172 La. 709, 135 So. 34; State v. Burch, 170 La. 812, 129 So. 212; State v. Tatum, 162 La. 872, 111 So. 264." State v. Morris, 222 La. 480, 62 So.2d 649, 650.

The general charge completely covered the plea of self-defense, and we cannot see where the defendant suffered any prejudice. Therefore, there is no merit in Bill of Exceptions No. 8.

■ Bill of Exceptions No. 9 was taken to the refusal of the trial court to grant Special Charges 2 and 3, which read:

Special Charge No. 2.

"It is requested that the Court charge the jury on the law of attempt, covering the offense of attempt to commit manslaughter."

Special Charge No. 3.

"It is requested that the Court charge the jury that the responsive verdicts in this case are:

"1. Guilty.

"2. Guilty of Attempted Manslaughter.

"3. Not Guilty."

The trial judge refused to give these special charges because of the following provision of LSA-Revised Statutes 15:386, which he considered mandatory:

"Whenever the indictment sets out an offense including other offenses of less magnitude or grade the judge shall charge the jury the law applicable to all offenses of which the accused could be found guilty under the indictment. The only responsive verdicts which may be rendered, and upon which the judge shall charge the jury, where the indictment charges the following offenses are:

3. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

"Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

"An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

"Whoever attempts to commit any crime shall be punished as follows:

"(1) If the offense so attempted is punishable by death or life imprisonment he shall be imprisoned at hard labor for not more than twenty years.

"(2) If the offense so attempted is theft or receiving stolen things, he shall

*      *      *      *      *      *

"Manslaughter:

"Guilty as Charged.

"Not Guilty."

It is the contention of defendant's counsel that under Article 14:27 of the LSA–Revised Statutes,[3] a verdict of attempted manslaughter is provided for by the substantive law of the State, and that Article 15:386 of the LSA–Revised Statutes,[4] un-

be fined not more than two hundred dollars, or imprisoned for not more than one year, or both;

"(3) In all other cases he shall be fined or imprisoned, or both, in the same manner as for the offense attempted; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."

The above statute was adopted as Article 27 (740–27) of the Code of Criminal Law and Procedure, Act 43 of 1942.

4. Article 386 of the Code of Criminal Law and Procedure (now LSA–R.S. 15:386, as amended by Act 183 of 1950) was amended by Act 147 of 1942 to read:

"Whenever the indictment sets out an offense including other offenses of less magnitude or grade, the judge shall charge the jury the law applicable to all offenses of which the accused could be found guilty under the indictment, and in all trials for murder the jury shall be instructed that they may find the accused guilty of manslaughter or negligent homicide."

Article 386 of the Louisiana Code of Criminal Law and Procedure, as amended by Act 147 of 1942, was further amended by Act 161 of 1948, so as to set out, for certain specified cases, those in-

der which the trial judge refused to charge attempt, being merely the procedural law of the State, did not deprive the defendant of the rights granted him by Article 14:27 of the LSA–Revised Statutes, which makes an attempt a separate but lesser grade of the intended crime.

The contentions of defendant are answered by our decision in State v. Simpson, 216 La. 212, 43 So.2d 585, 592. In that case Dale Simpson was charged with and tried for murder. Bill of Exceptions No. 44 was taken to the refusal of the trial judge to instruct the jury that among

cluded offenses which may be responsive verdicts and upon which the judge shall charge the jury, and all laws or parts of laws in conflict were repealed. This act was approved June 29, 1948. The amended article was identical to that portion of LSA–R.S. 15:386 quoted in the body of this opinion.

5. In State v. Simpson, supra, we reviewed the prior jurisprudence and the effect of the new law, and stated:

"Defendant strenuously urges that the act is unconstitutional. His entire argument is founded upon a belief that Act No. 161 of 1948 is a procedural act which amends the substantive law and that such legislation is unconstitutional; he cites as authority State v. Rodosta, 173 La. 623, 138 So. 124, and State v. Brown, 214 La. 18, 36 So.2d 624.

"In State v. Rodosta the question arose whether the Legislature could, by adopting the Code of Criminal Procedure, change the substantive law of the state. Preparatory to the drafting and adopting of the Code of Criminal Procedure, the legislature, possibly apprehensive as to the validity of the adoption of an entire code by a single act in view of the gen-

certain other enumerated charges, it could bring in a verdict of "Guilty of Attempted Murder" or "Guilty of Attempted Manslaughter." We ruled that the trial judge was correct in refusing to give the charge under LSA–R.S. 15:386, as amended by Act 161 of 1948, and stated:

"If the act is constitutional the defendant has no complaint, for the verdicts prescribed as being responsive to murder were given in the court's general charge to the jury. *. * *"

We found the act to be constitutional.[5]

eral prohibitions of Sections 16 and 18 of Article III of the Constitution, initiated a constitutional amendment. When adopted, it in effect provided for the drafting and adoption of the Code of Criminal Procedure. In Rodosta's case the court held that the legislature by adopting the Code of Criminal Procedure could not change the substantive law because no such authority had been conferred by the constitutional amendment. The principle of the Rodosta Case has been reiterated on numerous occasions, all dealing with an original article of the Code of Criminal Procedure, and all citing State v. Rodosta as the original authority. State v. Capaci, 179 La. 462, 154 So. 419; State v. Florane, 179 La. 453, 154 So. 417; State v. Elmore, 179 La. 1057, 155 So. 896; State v. Clement, 194 La. 395, 193 So. 685; State v. Moore, 196 La. 617, 199 So. 661. Properly understood the case does not establish ascendancy of the substantive over the procedural law, and it does not *prohibit an act which amends an article of the Code of Criminal Procedure from amending an article of the Criminal Code where the two articles are so nearly allied in subject and content as to make this result a necessity.* Nor

In the instant case the trial judge gave the proper charge to the jury with respect to responsive verdicts under an indictment for manslaughter, when he charged that the only responsive verdicts are "Guilty as Charged" and "Not Guilty". LSA–R.S. 15:386.[6]

Bill of Exceptions No. 9 is accordingly without merit.

Bill of Exceptions No. 10 was reserved to the action of the trial court in overruling defendant's objection to the written charge delivered to the jury. The basis of the bill is that the written charge of the trial judge did not contain the subject matter submitted by defense counsel in Special Charges Nos. 1, 2 and 3.

Bill of Exceptions No. 10 is without merit for the reasons set forth in our discussion of other bills.

Bill of Exceptions No. 11 was taken to the trial court's overruling defendant's motion for a new trial. This bill is without merit as it incorporates all previous objections which have already been ruled upon.

For the reasons assigned, the conviction and sentence are affirmed.

do we know of any other authority which supports counsel's position, despite his assertion that it is 'horn book' law. In State v. Brown, this court expressly refrained from passing upon the question." (Italics ours.)

89 So.2d 299

**STATE of Louisiana**

v.

**Floyd LEDENT.**

No. 42922.

June 11, 1956.

6. The crime of possession of Narcotics is not included within the enumerations of LSA–R.S. 15:386. Therefore, the case of State v. Marshfield, 229 La. 55, 85 So.2d 28, is not apposite.